**UNITED STATES of America,**

v.

**Mohammad A. SALAMEH, a/k/a "Kamal Ibraham," Nidal Ayyad, Mahmud Abouhalima, Ahmad Mohammad Ajaj, a/k/a "Khurram Khan," Ramzi Ahmed Yousef, a/k/a "Azan Muhammad," a/k/a "Khurram Ham," a/k/a "Rashed," a/k/a "Kamal Ibraham," a/k/a "Abdul Basit," and Abdul Rahman Yasin, a/k/a "Aboud," Defendants.**

No. S5 93 Cr. 0180 (KTD).

United States District Court,
S.D. New York.

June 14, 1994.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City, J. Gilmore Childers, Henry DePippo, Lev L. Dassin, and Michael J. Garcia, Asst. U.S. Attys., for the U.S.

Legal Aid Soc., Federal Defender Services Unit, New York City (Robert E. Precht, John P. Byrnes, of counsel), for defendant Mohammed A. Salameh.

Atiq R. Ahmed, Silver Spring, MD and Mahmoud Ramadan, New York City, for defendant Nidal Ayyad.

Hassen Ibn Abdellah, Muhammad Ibn Bashir, Elizabeth, NJ, and Clarence Faines, III, Montclair, NJ, for defendant Mahmud Abouhalima.

Werner & Kennedy, New York City (Austin V. Campriello, of counsel), for defendant Ahmad Ajaj.

## MEMORANDUM

KEVIN THOMAS DUFFY, District Judge:

Defendants Mohammed A. Salameh, Nidal Ayyad, Mahmud Abouhalima, and Ahmad Mohammad Ajaj (collectively the "defendants") were convicted on March 4, 1994, for committing various criminal acts having to do with the bombing of the World Trade Center on February 26, 1993. On May 24, 1994, each defendant was remanded to the custody of the United States Attorney General for period not to exceed 240 years.

After the verdict but prior to sentencing, the defendants moved to dismiss the counsel who represented them in the seven-month trial over which I presided. In addition, the defendants petitioned to permit the law firm of Kunstler & Kuby (the "Kunstler firm") to be substituted as counsel for purposes of sentencing. At a hearing on April 15, 1994, I denied the application to have the Kunstler firm be substituted, and I directed that other conflict-free counsel be substituted as counsel for the defendants.

The conflicts that would inevitably arise if the Kunstler firm were allowed to represent all of these defendants before me while also representing Siddig Ali and Ibrahim El–Gabrowny in *United States v. Rahman,* S3 93 Cr. 181 (MBM) (hereinafter "*Rahman*") are

pervasive and readily apparent. So much so that it was, to my mind, unnecessary to formally set out an explanation of my ruling. What seems so clear to me, however, is apparently not clear to the defendants or to some of the attorneys whom I appointed as their standby counsel. Therefore, I write this Memorandum to set forth the legal and ethical principles, as well as the factual circumstances, upon which I relied when denying the defendants' petition to have the Kunstler firm represent them at sentencing.

■ Although not absolute, the Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 684–85, 104 S.Ct. 2052, 2062–63, 80 L.Ed.2d 674 (1984); *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 667–68, 66 L.Ed.2d 564 (1981). An important component of this limited right is that defendants have the right to conflict-free representation. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 464–65, 86 L.Ed. 680 (1942). *See United States v. Curcio,* 694 F.2d 14, 22 (2d Cir.1982) (*"Curcio II"*); *United States v. Curcio,* 680 F.2d 881, 886 (2d Cir.1982) (*"Curcio I"*). Thus, when a defendant seeks to have counsel who already represents a co-defendant represent him as well, a court should generally conduct a hearing "to determine whether a conflict exists to the degree that a defendant may be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the Sixth Amendment." *United States v. Carrigan,* 543 F.2d 1053, 1055 (2d Cir.1976). *See* Fed.R.Crim.P. 44(c).

■ If it is determined that a conflict exists, a defendant may waive the right to conflict-free counsel if the court accepts such waiver is knowingly and voluntarily made. *Curcio I,* 680 F.2d at 888. The United States Supreme Court in *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), however, ruled that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the amendment is to guarantee an effec-

tive advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* at 159, 108 S.Ct. at 1697. Thus, the Constitutional protection afforded by the Sixth Amendment focuses on the fairness of the adversarial process and not on the accused's relationship with any particular lawyer. *See United States v. Cronic,* 466 U.S. 648, 657 n. 21, 104 S.Ct. 2039, 2046 n. 21, 80 L.Ed.2d 657 (1984); *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

■ From this precept, *Wheat* deduces that waivers of conflict-free representation need not be accepted by a district judge when the institutional interest of ensuring fair legal proceedings is jeopardized by multiple representation. *Wheat,* 486 U.S. at 160, 108 S.Ct. at 1697–98. In *Wheat,* the petitioner argued that waivers by the defendants cured all problems created by multiple representation. The Court rejected this argument and held that:

> no such flat rule can be deduced from the Sixth Amendment presumption in favor of counsel of choice. Federal Courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.... Not only the interest of the criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation." *Id.*

Thus, "where the court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented." *Id.* at 162, 108 S.Ct. at 1698. *See United States v. Dolan,* 570 F.2d 1177, 1184 (3d Cir.1978).

*Wheat* recognized that a trial court's balancing of the institutional interest of ensuring that fair legal proceedings are conducted with the right to counsel of choice is frequently questioned. "[T]rial courts confronted with multiple representations face the prospect of being 'whipsawed' by assertions of error no matter which way they rule." *Wheat,* 486 U.S. at 161, 108 S.Ct. at 1698.

Because of the complexity involved in balancing these interests, *Wheat* affords district judges "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where actual conflict may be demonstrated ... but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict." *Id.* at 163, 108 S.Ct. at 1699.

■ The principles underscored by *Wheat* were recently recognized by the Court of Appeals for the Second Circuit. "[A]lthough a criminal defendant can waive [his] Sixth Amendment rights [to conflict free counsel] in some circumstances, that right to waiver is not absolute." *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994). Instead, the presumption in favor of the defendant's chosen counsel must be weighed against "the interests of the courts in preserving the integrity of the process and government's interests in ensuring a just verdict and a fair trial." *Id.* Moreover, the presumption is "overcome by a showing of an actual conflict or potentially serious conflict." *Id.* See *United States v. Fulton*, 5 F.3d 605, 612 (2d Cir.1993); *United States ex rel. Stewart v. Kelly*, 870 F.2d 854, 856 (2d Cir.1989); *United States v. Arrington*, 867 F.2d 122, 129 (2d Cir.1989); *United States v. Snyder*, 707 F.2d 139, 145 (5th Cir.1983).

Ordinarily, the issue of conflicts of interest due to the representation of multiple defendants by the same counsel arises in the pre-trial context. It is rare for a multiple counsel conflict to arise after a verdict but prior to sentencing. Two related reasons exist for this phenomenon. First, unlike the pre-trial stage, the conflicts that may arise from multiple representation at the post-trial stage are usually clear. Only the foolish would attempt to predict at the pre-trial stage what the events of a trial will be. By the time the trial has ended, the defenses as well as the facts of the case have been fully set forth to a jury. The uncertainty that exists at the pre-trial stage has passed. The defenses and arguments that the multiple defendants have made vis-a-vis each other are clear. Therefore, any conflict that may exist is also clear.

Because the conflicts are clear at the post-trial stage, attorneys as members of the bar and officers of the court will generally not put the court in the position of resolving a conflict dispute prior to sentencing. This self-policing mechanism is premised on the notion that attorneys have an ethical duty to "decline proffered employment ... if it would be likely to involve ... representing differing interests." Disciplinary Rules of the Code of Professional Responsibility, N.Y.Comp.Codes R. & Regs. tit. 22, § 1200.-24(A) (1993). The Kunstler firm has, however, not consistently cleaved to the bar's professional duties in their legal practice. *See, e.g., United States v. Lonetree*, 35 M.J. 396, 411–13 (C.M.A.1992) (hearing is ordered to determine whether William Kunstler provided ineffective assistance of counsel when he advised his client not accept a plea agreement that would have significantly reduced his sentence in order to argue at trial that the government's case was racially motivated), *cert. denied,* —— U.S. ——, 113 S.Ct. 1813, 123 L.Ed.2d 444 (1993). Indeed, in this matter, the Kunstler firm has again demonstrated that in their practice, media publicity and notoriety are simply more important than the law, professional ethics, or even their clients for that matter.

There is a remedy for such behavior. The Second Circuit has instructed that "[i]f an attorney will not perform his ethical duty, it is up to the courts to perform it for him." *Locascio*, 6 F.3d at 934. My rulings in this matter were designed to ensure that ethics are maintained, standards are kept, the rule of law is followed, and the defendants receive effective assistance of counsel.

■ The conflict in this matter is patently obvious. The Kunstler firm represents Siddig Ali and Ibrahim El–Gabrowny in *Rahman*, which is currently scheduled to be tried before Judge Mukasey this September. The criminal transaction tried in the case at bar forms a part of the charges in *Rahman*. Furthermore, each of the four defendants in this case is alleged to be an unindicted co-conspirator in *Rahman*. Therefore, any lawyer representing these defendants must inform them that one of their options is to provide evidence and testimony against the

defendants in *Rahman.* This option is particularly important in this case where the defendants were convicted of heinous crimes that resulted in the death of six innocent people. The nature of the crimes made their options at sentencing quite limited. For instance, according to the probation department, the sentencing guidelines for this crime yields a base level of 43. Such a level mandates a sentence of life imprisonment.[1] Therefore, the only realistic hope that the defendants had to lessen their sentences was to cooperate with the government. In this case, such cooperation almost certainly would have involved the provision of information and, quite conceivably, testimony regarding defendants in *Rahman.* Of course, this posture would have placed the defendants' interests in direct conflict with those of Ali and El–Gabrowny.

Whether the defendants decide to provide such evidence is strictly their decision. Even if these defendants insist that they will not cooperate with the government, their attorneys must still in good faith inform them of the option to cooperate with the government. Anything less amounts to a failure to fulfill their ethical obligations. *See* Disciplinary Rules of the Code of Professional Responsibility, N.Y.Comp. Codes R. & Regs. tit. 22, § 1200.32(A)(1) (1993) ("A lawyer shall not intentionally fail to seek the lawful objectives of the client through reasonably available means permitted by law."). It is impossible for the Kunstler firm to provide such counsel while representing Ali and El–Gabrowny. Simply, the Kunstler firm cannot in good faith advise these defendants that they have the option of testifying against Ali and El–Gabrowny and the other defendants in *Rahman.* *See Wheat,* 486 U.S. at 160, 108 S.Ct. at 1697 ("Joint representation of conflicting interest is suspect because of what it tends to prevent the attorney from doing.") (citations omitted). Thus, an actual conflict would have existed had the Kunstler firm been allowed to represent any or all of these defendants.

In addition, each of these defendants presented conflicting defenses at trial. For instance, defendant Salameh's defense was to admit much of the government's factual assertions but to deny that he knew of the criminal conspiracy and that he lacked the requisite intent to commit the crimes for which he was charged. *See* Trial Transcript of *United States v. Salameh, et al.,* S5 93 Cr. 0180 (KTD) (Feb. 16, 1994) at 8577–79. In his defense, defendant Abouhalima argued that the government manufactured evidence as part of a conspiracy against so-called Islamic fundamentalists. *See* Trial Transcript (Feb. 17, 1994) at 8728–39. These defenses obviously conflict. To allow all these defendants to be represented at sentencing by the Kunstler firm would do an injustice to them and to the Sixth Amendment's guarantee of effective assistance of counsel.

There are certain other issues that raise disturbing problems. First, prior to being permitted to represent Ali and El–Gabrowny, the Kunstler firm objected to Judge Mukasey's direction that independent counsel advise their clients of their right to conflict-free representation. The Kunstler firm's insensitivity to the conflict issue is further demonstrated by its attempt to represent Omar Ahmad Ali Abdel Rahman in *Rahman.* Judge Mukasey disqualified the Kunstler firm from representing Rahman when he found that "the conflict between [Rahman] on the one hand, and Siddig Ali and El–Gabrowny on the other, is plain and palpable." *United States v. Rahman,* 837 F.Supp. 64, 71 (S.D.N.Y.1993). This seemingly insatiable desire to represent so many defendants in these related cases may well indicate that the Kunstler firm is pursuing interests other than its clients' well-being. *See Wheat,* 486 U.S. at 163, 108 S.Ct. at 1699 ("Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.").

These concerns have only been heightened by the Kunstler firm's pursuit of interests

---

1. The statute in this case barred a sentence of life imprisonment and mandated a sentence of "any term of years." *See* 18 U.S.C. §§ 844(d), (f), & (i). *See also Rothgeb v. United States,* 789 F.2d 647, 651 (8th Cir.1986); *United States v. Williams,* 775 F.2d 1295, 1299 (5th Cir.1985), *cert. denied,* 484 U.S. 1017, 108 S.Ct. 726, 98 L.Ed.2d 675 (1986).

786

actually adverse to the four defendants in the instant case. On March 9, 1994, five days after the verdict, the Kunstler firm wrote the government to request that the four defendants in the instant case be returned to the Metropolitan Correctional Center so that they could interview them in the hope of developing evidence favorable to their clients in *Rahman.* The Kunstler firm did not consult with the attorneys representing these defendants before making this request. Indeed, it was only after this request was denied that the Kunstler firm sought to enter into this case. Their desire to speak with the defendants raises the shadow of a very real possibility that the Kunstler firm may have sought to represent these defendants in order to *prevent* the defendants from cooperating with the government.

The defendants at their sentencing stated that they would never cooperate with the government. While it is certainly within their rights not to cooperate, this stated intent does not obviate the responsibility of counsel to advise these defendants of their option to cooperate. *See* Disciplinary Rules of the Code of Professional Responsibility, N.Y.Comp.Codes R. & Regs. tit. 22, § 1200.-32(A)(1) (1993). As explained above, the Kunstler firm cannot provide such advice without breaching their ethical obligation to Ali and El–Gabrowny. *See* Disciplinary Rules of the Code of Professional Responsibility, N.Y.Comp.Codes R. & Regs. tit. 22, § 1200.24(A) & (B) (1993).

■ Finally, it has been suggested that a hearing under the rubric of the *Curcio* decisions should have been held no matter what the conflict. The *Curcio* decisions suggest that it is not appropriate for a district judge to refuse to accept a knowing and voluntary waiver. *Curcio I,* 680 F.2d at 888. *Wheat,* a subsequent Supreme Court decision, rejected this proposition and held that a district court need not accept such a waiver if an actual conflict or a potential for conflict arises. *Wheat,* 486 U.S. at 160, 163, 108 S.Ct. at 1697–98, 1699. The purpose of a *Curcio* hearing is simply to determine whether a defendant knowingly and voluntarily waived his right to conflict-free representation. *Curcio II,* 694 F.2d at 25; *Curcio I,* 680 F.2d

at 886. Where a district judge, however, is not inclined to accept a proffer of a waiver because of known facts prior to any hearing, the reasoning of *Wheat* as well as simple logic dictates that a hearing is not necessary. *See Wheat,* 486 U.S. at 163, 108 S.Ct. at 1699.

■ My rulings in this matter assumed that the defendants would waive their right to conflict-free counsel knowingly and voluntarily. In other words, using the discretion bestowed upon me, I would reject any waiver the defendants made to conflict-free representation. To have a hearing on this matter, therefore, would have been a needless expenditure of time and resources.