**UNITED STATES of America,**

v.

**Affis CRUZ, a/k/a "Afi," and Aman Herrera, a/k/a "Armand," Defendants.**

**No. 97 CR. 33(SWK).**

United States District Court,
S.D. New York.

Nov. 5, 1997.

---

Jean Walsh, Asst. U.S. Atty., Mary Jo White, U.S. Atty., Criminal Div., New York City, for U.S.

Roland Thau, Fed. Defenders Services Unit, New York City, Jack Sachs, New York City, for Defendants.

## ORDER

KRAM, District Judge.

Defendant Aman Herrera ("Herrera") is charged in a three count indictment with (1) participating in a conspiracy to distribute cocaine base from in or about May 1996 through December 12, 1996, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A) (Count One); and (2) distributing and possessing with intent to distribute crack cocaine on or about October 26, 1996, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2 (Count Two). The Government moves for the disqualification of Herrera's attorney due to a conflict of interest that cannot be resolved. For the reasons set forth below, the motion is granted.

## BACKGROUND

On July 18, 1997 the Government informed the Court, by means of a sealed ex parte letter, that Herrera's attorney, Roland Thau, ("Thau") of the Southern District of New York Federal Defender Division of the Legal Aid Society ("Federal Defender Division"), has a conflict of interest. In a prior action, Thau represented an individual, who for the purpose of this motion, shall be referred to as "John Doe." Although John Doe, himself, has no direct involvement in the instant case, his wife, "Jane Doe," is likely to be a key witness in the instant trial.[1] Specifically, Jane Doe served as a confidential informant for the Government in the instant case, and thus will likely testify on behalf of the Government.[2] Jane Doe's cooperation with the Government in this capacity is based on the understanding that her assistance with the Government's investigation and/or prosecution of Herrera will prompt the Government to write a 5K1.1 letter to her husband's sentencing judge, resulting in a reduction of her husband's sentence.[3]

On July 23, 1997 the Government informed Thau of the conflict of interest and subsequently asked the Court to conduct a *Curcio*

---

1. At this time, the identities of the Thau's prior client, John Doe and his wife, Jane Doe, have not been disclosed to the defendant.

2. Thau has indicated to the Government that he will call the confidential informant as a witness at trial should the Government fail to do so.

3. Section 5K1.1 of the Sentencing Guidelines provides:

   Upon motion of the government stating that the defendant has provided substantial assis-

tance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

United States Sentencing Guidelines Manual § 5K1.1. The United States Attorney for the Southern District of New York has a practice of writing 5K1.1 letters to the Court on behalf of a defendant whose spouse offers substantial assistance. It is this practice that creates the unusual conflict in this case.

hearing.[4] On August 27, 1997 the Government informed the Court that John Doe, Thau's prior client, did not waive the conflict of interest. The Government also informed the Court that after consulting with independent counsel, Herrera was willing to waive the conflict of interest and proceed with Thau as his attorney in a limited capacity. Nevertheless, the Government moved the Court to disqualify Thau and the Federal Defender Division as counsel for Herrera, given John Doe's unwillingness to waive the conflict of interest. At the same time, the Government withdrew its motion for a *Curcio* hearing, claiming that a hearing would not resolve the competing rights of the two clients to unconflicted free counsel.[5] Thau does not contest the Government's motion.

## DISCUSSION

### I. Sixth Amendment

■ The Sixth Amendment to the United States Constitution gives a criminal defendant the right to have the assistance of counsel for his defense. U.S. Const. amend. VI. The right to counsel under the Sixth Amendment entails a correlative right to representation that is free from conflicts of interest. *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). Although a defendant generally may waive his Sixth Amendment right to an unconflicted attorney, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159,

108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988); *United States v. Lussier*, 71 F.3d 456, 461 (2d Cir.1995). Thus, when deciding motions for disqualification, the Court must balance the defendant's right to counsel of his choice and "the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." *United States v. Levy*, 25 F.3d 146, 155 (2d Cir.1994).

■ There is a presumption that arises in favor of the accused's chosen counsel. This presumption can be overcome by a showing of an actual conflict or a potentially serious conflict.[6] *Id.* If the Court discovers that the attorney suffers from a severe conflict, such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation, the Court is obliged to disqualify the attorney. *Id.* Only if the Court discovers that the attorney suffers from a lesser conflict, such that a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation should the Court allow the defendant to waive his right to a unconflicted lawyer.

### II. Thau's Conflicts

■ In the instant case, Jane Doe is assisting the Government with the understanding that any assistance provided to the Government will earn her husband, John Doe, a 5K.1 letter, resulting in a reduction of the John Doe's sentence. Therefore, any cross examination of the Jane Doe by Thau that tends to impeach her credibility could adversely effect her husband's chances of ob-

---

**4.** *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982) requires the Court, prior to permitting waiver of unconflicted counsel to ensure that the defendant makes a "knowing and intelligent" waiver of his right to unconflicted counsel.

**5.** ABA Model Rule of Professional Conduct 1.9(a) provides:
   A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

**6.** The line between actual and potential conflicts is not always clear. An actual conflict is one that

is so serious that it impedes the attorney's ability to present a vigorous defense. *United States v. Lech*, 895 F.Supp. 586, 590 (S.D.N.Y.1995). An actual conflict exists when "during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir.1993) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356 n. 3, 100 S.Ct. 1708, 1722 n. 3, 64 L.Ed.2d 333, (1980)), *cert. denied*, 511 U.S. 1022, 114 S.Ct. 1407, 128 L.Ed.2d 79 (1994). A potential conflict is a lesser conflict that a rational defendant could knowingly and intelligently waive. *United States v. Lech*, 895 F.Supp. at 590.

taining a reduced sentence. For example, if Jane Doe's credibility is questionable or her performance is unsatisfactory at trial, the Government may refuse to give credit to John Doe because of her poor performance. Thus, by effectively representing Herrera through vigorous cross-examination of Jane Doe, Thau may harm his former client's chance of obtaining a reduced sentence.[7] However, if Thau restricts his cross-examination of Jane Doe to preserve the rights of his former client, he will be violating Herrera's rights to effective assistance of counsel. *See e.g., United States ex rel Stewart on Behalf of Tineo v. Kelly,* 870 F.2d 854, 857 (2d Cir.1989) (inability to vigorously cross-examine informant and former client of defendant's attorney required disqualification of attorney); *United States v. Iorizzo,* 786 F.2d 52, 57 (2d Cir.1986) (disqualifying attorney where witness's prior testimony was relevant and defense counsel could not use that testimony to attack the witness's credibility without placing prior relationship between attorney and witness in jeopardy).

In addition, during Thau's representation of John Doe he is likely to have received privileged information. At John Doe's trial, Jane Doe is alleged to have been in court each day and in constant contact with the Thau and his co-counsel. Thus, Jane Doe is likely to have had conversations with Thau that involved privileged information regarding her husband, John Doe. While Jane Doe's discussions with John Doe's attorneys are not necessarily privileged, if the John Doe was the source of the information exchanged between the Jane Doe and Thau, it is conceivable that an effective cross-examination of Jane Doe would breach John Doe's attorney-client privilege. It is likely that Thau would feel compelled not to use the privileged information, thereby denying Herrera the vigorous advocacy required of an attorney to effectively represent his client. *See e.g., United States v. Calabria,* 614 F.Supp. 187, 193 (E.D.Pa.1985) (possession of confidential information from a former client's

case would hinder the attorney's performance on current client's case).

Finally, Thau's representation of Herrera may place Thau in the position of an unsworn witness. Thau and Jane Doe are alleged to have conversed during John Doe's trial. Therefore, during the course of representing Herrera, Thau may need to place himself in the position of being a witness to those conversations. If Thau attempts to impeach Jane Doe with information he learned during conversations that he had with her, Thau would be acting as an unsworn witness. Whereas Thau might ordinarily place a rebuttal witness on the stand to discredit the witness's testimony, Thau may be the only witness capable of challenging Jane Doe's recollection of conversations between them.

Even if Thau is not going to serve as a witness, his performance as an advocate may be impaired by his relationship to the events in question.

> For example, the attorney may be constrained from making certain arguments on behalf of his client because of his own involvement.... Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination.

*United States v. Locascio,* 6 F.3d 924, 933 (2d Cir.1993), *cert. denied,* 511 U.S. 1070, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); *United States v. Rahman,* 861 F.Supp. 266, 275 (S.D.N.Y.1994). Furthermore, "[w]hen an attorney labors under dual roles as attorney and witness this 'blurs the line between argument and evidence' and impairs the jury's ability to find facts." *United States v. Arrington,* 867 F.2d 122, 126 (2d Cir.), *cert. denied sub nom., Davis v. United States,* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989).

### III. Disqualification

Herrera's right to counsel of his choice is outweighed by serious potential conflicts of interest. The Court finds that the potential

---

**7.** By considering the effect of Thau's representation of Herrera on the prior client, the Court is making no judgment about the prior client's right to effect Thau's representation of Herrera.

Rather, the Court considers Thau's representation of the prior client only as it may impact his effective representation of Herrera.

conflicts are so serious that Herrera could not knowingly and intelligently waive them. Furthermore, Thau's loyalty would necessarily be divided between Herrera and his former client causing a strong appearance of impropriety. The Court is mindful of Judge Kevin T. Duffy's poignant observation that "[o]nly the foolish would attempt to predict at the pre-trial stage what the events of a trial will be." *United States v. Salameh*, 856 F.Supp. 781, 784 (S.D.N.Y.1994). However, because the Government has an obligation to bring conflicts to the Court's attention at the earliest possible moment,[8] the Court must make a candid assessment of the events that are likely to occur at trial. *See United States v. Stantini*, 85 F.3d 9, 13 (2d Cir. 1996); *see also Holloway v. Arkansas*, 435 U.S. 475, 488, 98 S.Ct. 1173, 1180, 55 L.Ed.2d 426 (1978) (Court has obligation to inquire into attorney's interests on receipt of a timely conflict of interest objection). Thus, although the Court is reluctant to overrule Herrera's choice of counsel based on speculation about what may occur at trial, the Court's concern about the central role that Jane Doe plays in this case requires the Court to exercise its independent obligation to ensure that Herrera has an effective advocate at trial.

The Government has also moved to disqualify all members of the Federal Defender Division from representing Herrera. The American Bar Association ("ABA") Model Rules of Professional Conduct prohibit members of the same firm from representing clients in matters which are materially adverse to the interests of a former client unless the appropriate waivers have been obtained.[9] ABA Model Rules of Professional Conduct 1.9; *see also* New York Code of Professional Responsibility DR 5–105, 22 New York Code Rules & Regs. § 1200.24. However, given the limited information before it, the Court will not now decide whether the Federal Defender Division must be disqualified.

## CONCLUSION

For all of the reasons set forth above, it is hereby

ORDERED that Thau be disqualified from representing Herrera in the instant action. It is further

ORDERED that an unconflicted attorney be appointed to represent Herrera. It is further

ORDERED that the parties shall appear for a pre-trial conference on November 19, 1997 at 10:30 a.m.

SO ORDERED.

---

8. The Government claims that it became aware of the conflict on July 17, 1997. By informing the Court of the conflict on July 18, 1997 through a sealed ex parte letter, the Government has met its obligation to bring its disqualification motion at the earliest possible stage of the proceeding. *See United States v. Iorizzo*, 786 F.2d at 59.

9. The Southern District of New York generally disciplines attorneys when their conduct violates either the ABA Model Code of Professional Responsibility or the New York Code of Professional Responsibility. *United States v. Lech*, 895 F.Supp. 586, 590 n. 5 (S.D.N.Y.1995).